Number 181148, UBS Financial Services v. XL Specialty Insurance Co. Thank you, Robert Smith, and the appellants. If I may, reserve three minutes for rebuttal. Yes. Thank you, Your Honor, and may it please the Court. At the insurer's invitation, the District Court adopted a limitless interpretation of the specific litigation exclusion. Under the insurer's view, any common fact among the prior and disputed matters results in a complete denial of coverage. The insurer's interpretation is flawed for three reasons. First, the exclusion is not triggered by the presence of a single shared fact. There must be substantial overlap of relevant facts. Second, the exclusion does not bar coverage for entire proceedings, yet only for wrongful acts that were already alleged in the prior matters. And third, even if this Court is not fully persuaded by our first two points, there are certainly plausible interpretations of the policies, and this Court is required to adopt them by resolving the ambiguity in UBS's favor. The reality in this case is that the prior and disputed matters differ in a number of material respects. Take the first prior matter, SEC 1. It involved allegations that UBS misled investors about the liquidity of the funds and how price pricing was set. SEC 2, in contrast, and many of the other disputed matters, involved allegations about misleading statements as it related to the risks of using lines of credit as they related to closed-end funds. Those are entirely different wrongful acts and issues. Take the second example, union. Union involved allegations about the suitability of specific investments for the funds. In that case, it was ERS bonds and their suitability for particular funds. The disputed matters, in contrast, involved allegations about the suitability of the funds as investments for consumers. And again, those are different inquiries. For example, a prospectus serves as sort of a constitution, if you will, for a closed-end fund. A claim that a bond was unsuitable for the fund might be based on the fact that the prospectus doesn't allow the fund to hold that investment. Suitability determination for a consumer is entirely different. It takes into account risk preferences, whether... Well, it could be. Here, it seems to be the same rather stark characteristics would be the characteristics that might render it unsuitable in both instances. So, although you could imagine one that's unsuitable for one but suitable for the other, here there seemed to be some commonality. Even if there is some commonality, Your Honor, because of the act-by-act analysis, you'd actually have to look at the differences between the two. And many of the claims about suitability deal with the bond market collapse. They deal with the continued suitability of the fund for consumers following the bond market collapse. And in any event, the alleged loan scheme that is issued in the disputed matters is not at issue at all in the prior matters. Well, take the Casanovas litigation. That's one of the disputed matters. Yes, that's right, Your Honor. There's an allegation in that that UBS for years concealed its conflicts of interest. Certainly, Your Honor, and those are... I thought conflicts of interest was one of the main focuses of the SEC one and union litigation. That's correct, Your Honor, but those are background allegations that were included in Casanovas. Well, that's a little more than a background. If you've got a conflict of interest, what you're selling. Well, the other facts of Casanovas, Your Honor, are... Take the other fact that there's an allegation that it was using CFEs as a dumping ground for the bonds that they underwrote, creating a ready-made captive market. That was another allegation of Casanovas. How is that different from the allegation in the union litigation that they were selling all these bonds while they were getting rid of their own? Because in union, the allegation dealt with specific bonds. There were ERS bonds, three issuances, and it related to four specific funds. Casanovas is broader in its coverage, and the allegations relate to suitability for consumers, and they also involve allegations about the loan scheme. But even if we put Casanovas to one side, let's talk about SEC 2. Because SEC 2 involved $15 million in defense expenses on a $20 million policy, or loss, excuse me, not including defense expenses. That merely exhausts the policy by itself. SEC 2 involves allegations about risks inherent in using loans either collateralized by closed-end funds. None of those allegations are at issue in the prior matter. Excuse me. Yes, Your Honor. These powers were heavily negotiated between UBS and the insurance company, were they not? Yes, they were, but... And the issues you're talking about were subject of these negotiations, were they not? No, they were not, Your Honor. So what happened... They were the ones that you wanted to have covered, and the insurance companies did not want to cover it. So one of the disputes over the specific litigation exclusion had to do with adding the term wrongful act within the language of the exclusion itself. And ultimately, the insurers stuck to their position. There's a reason, though, why courts don't rely on negotiations to determine issues that arise in the future, and that is that none of these matters had occurred at the time. There's no way to know. Simply because my clients were pushing back on a definition that they were taking, that doesn't resolve the issue of what the text of the policies that the parties agreed to resolve. Well, your problem is that the text, the text literally read seems to cover virtually everything. So your best argument has to be, well, it does cover everything, but that would render the policy illusory, so we need to look at Raytheon and read it in a non-illusory manner. That's correct, Your Honor. You're going to get to that argument if you basically conceive that literally it covers everything. Certainly, Your Honor. In Raytheon, this court said that it was inappropriate to adopt the broadest possible construction of the exclusion. So if that's the route you have to follow, step one being, yes, literally it's overbroad, but two, Raytheon tells us it can't be illusory, so we need to tab it in in some ways. What you've then got, though, is a very broad but tugged back in so that it's not illusory. It doesn't require that much be saved in order to not be illusory. I disagree, Your Honor. So what the policy doesn't speak to here is what is the significance of the fact. Is it any fact whatsoever, such as the presence of UBS as the common defendant in these proceedings, or is it a relevant fact as Raytheon recognized? That issue is silent, and under Puerto Rican law, which is more generous than the Massachusetts law that this court applied in Raytheon, you have to strictly construe the terms in the exclusionary clause to provide coverage. And under that Raytheon analysis, you need to read into the contract that it has to be relevant facts. Otherwise, again, the coverage would serve no purpose. The presence of UBS in each of these actions would knock out coverage, and that's impossible. But if your definition of relevant facts is motivated by a desire to avoid, as you say, having the policy provide no purpose, we don't have to have a very strict definition of relevance to avoid that thing that is causing us to move away from the literal language of a clause, which, as Judge Torralea has pointed out, your client hired a very reputable, large, sophisticated law firm specifically to negotiate the best clause it could possibly get. Excuse me, Your Honor. What I would say to that is several things. First off, Raytheon is just one factor that this court has to analyze here. And I agree, if you take the broadest possible construction, then it's difficult to find that the claims are covered here. But it's not simply the Raytheon standard. It's also what is your comparator here? What are you looking at? And there are three reasons why the policy here has a comparator that requires an act-to-act comparison and not the proceeding-wide comparison that the district court adopted. What do you mean when you say act-to-act? I could not understand that. Are you talking count-by-count? I'm talking about wrongful acts that could give rise to a cause of action. So if the allegation is that you made misleading representations as it related to the illicit loan scheme, those facts would constitute relevant facts with regard to a particular wrongful act, the illicit loan scheme. And you would compare whether or not those are present in the prior matters. And they're not. So you would know that those specific allegations of wrongdoing are, in fact, covered and not excluded under the policy. What if there's a common nucleus? In other words, you've got this problem of they've got propped up by a secondary market, so they're really not fundamentally secure funds, and then you've just got one guy selling them by lending money, someone else selling them by not revealing suitability, someone else is making misrepresentations about conflicts of interest. But at the core of all of that, you've got a common core, which is this economically irrational bond structure. So I don't think that it's an economically irrational bond structure, Your Honor. All of this was disclosed in prospectuses, and it was put out in the public so that investors could make an investment in a largely tax-free investment option. And they were disclosed as non-diversified funds. They were disclosed that they were selling out of their own book while they were urging people to buy or loan? I think it was disclosed in the prospectus, Your Honor, the relationship among the parties. The allegations that are brought in the arbitrations are essentially that investors disregarded the prospectus and were misled. Then that sounds like you're saying there's a common defense to all of these, which is the prospectus. Sure. Well, in any case that involves misrepresentation, which you're going to have in any kind of securities or investment claim, there's going to be focus on alleged misrepresentations. To say misrepresentation A and misrepresentation B are the same thing simply because they involve a misrepresentation is not sufficient to exclude them under the policies. And as Chief Judge Howard pointed out in his dissent in Raytheon, the proceeding-by-proceeding-wide approach that they've adopted here has serious concerns. The insurers read the exclusion, and now I'm quoting from your dissent, to deny coverage for claims that would be covered but for the fortuity that they are asserted in a complaint which also set forth claims that are excluded. Imagine if you simply had an allegation of the illicit loan scheme that's at issue. There's no, in my opinion, there's no question that that is not excluded under the policies, and yet the insurers are essentially invoking other facts that happen to be pled in the same complaint as a sufficient basis to deny coverage for everything. And that is a problematic interpretation of these policies. Sir? Yes, Your Honor. Since you're invoking Puerto Rican law as an issue, as I understand it. Yes, Your Honor. Are you aware of any case from Puerto Rico in which they have applied that to this type of contrast between these two types of parties? Yes, so Your Honor, we cite that in our reply brief. This court's decision in AJC in which it was sitting in I'm not talking about this court, I'm talking about Puerto Rico. I'm not, Your Honor. I'm not aware of a case for or against that proposition. I can tell you that this court in AJC, sitting in diversity, applied the rule against ambiguities as it related to two commercial entities in a dispute. And what I would say is it's not just that prong, Your Honor, about resolving ambiguities. Puerto Rican law also holds that exclusionary clauses are not favored and strictly construed in such a way to ensure that the insurance protections are met. Take that. It's not a general rule. I mean, here you have negotiations taking place about them. Between the two entities, there are not exactly the usual type of parties that you refer to in Puerto Rican law anyway as to apply the adhesion of a rule. May I briefly respond? Yes, of course. Yes, Your Honor. What I would say to that, though, is that no party could have predicted this interpretation, in my opinion, of the policies. You have a decision by this court, Raytheon, applying a stricter standard under Massachusetts law, and the view that any fact, no matter what it is, no matter how immaterial or irrelevant, would result in a complete denial of claims was not predictable to our clients and it's not supported by the text of the agreement. Suppose the clause simply says there'll be absolutely no coverage under any circumstances for anything to do with bonds issued by Puerto Rican instrumentalities. Perfect. That would be a perfect example of what they would want to achieve here. And would you agree you would have no coverage for any of these under that? I would agree. But they're trying to take a specific litigation exclusion with two specific prior matters that have discrete facts and essentially read that as broadly as possible. That's only once you limit the clause, because it seems to me that what they actually got instead of the clause I just gave you is they got something broader than that. They got something that literally covers virtually everything. I disagree, Your Honor. I think what they got was a specific litigation exclusion that referenced claims that at the time of negotiation were pending. This was negotiated in 2012. All those claims were pending at the time. And it makes complete sense that they would want to bar coverage for those claims and substantially similar follow-up claims. Now you're talking about the sense of the deal. I'm talking about the language. The language, you say ambiguous. I don't see ambiguous there. I see so broad it may be illusory. Certainly, Your Honor. And what I would say is that the language in Raytheon was actually broader, because here you have any fact alleged or underlying the prior matters. In Raytheon, what you had was the same or substantially similar facts. So arguably, the language at issue in Raytheon was broader. Thank you, Your Honor. Good morning. My name is Kara Duffield. I represent Exile Specialty Insurance Company, and I'll be presenting argument on behalf of all the insurer employees. The district court correctly held that the specific litigation exclusion bars coverage for the disputed matters. The court held the exclusion is unambiguous, and it then carefully analyzed the prior matters and disputed matters, and it found numerous connections between those matters and held the connections triggered the exclusion. There's no reason to disturb the district court's judgment on appeal, and we submit that there are three particular reasons to affirm, which I'd like to touch on briefly before addressing some of the points that UBS's counsel made. First, the specific litigation exclusion was an expressly negotiated term of the policies. UBS was represented by Marsh, one of the world's preeminent insurance brokers, and Covington & Burling, a sophisticated law firm with a policyholder's-side practice. With their help, UBS negotiated many changes to the policies, including an expressly lower premium. But Excel was firm that the specific litigation exclusion needed to stay on the policy, and UBS agreed to purchase the policies with the exclusion. It's now arguing that the exclusion should be interpreted in exactly the way it tried to exchange, to change the exclusion during policy negotiation, but failed. And so we would submit that UBS is basically trying to get here what it failed to purchase when it negotiated the policies. Second, UBS- Well, that doesn't logically follow, does it? Because if policy language were ambiguous, and I insisted in negotiating that I wanted the ambiguity clarified so that it went my way, and you refused it, and then I said, what the heck, I'll take my chances, and we signed it, that doesn't tell us then, a court, if it then finds it ambiguous and then brings in a rule of construction, I ended up winning. Your Honor, the court, of course, always has the liberty of deciding that the language is ambiguous. We would merely point out that when the parties were negotiating the policy, UBS was troubled by the in any way involving any fact language, tried to change it to the same wrongful acts, Excel declined, and UBS purchased the policies anyway. Now, perhaps, as Your Honor points out, they decided they would just take their chances in litigation, but we do think that it's noteworthy that they leveraged the fact of the exclusion to get a lower premium as opposed to the reverse, saying, well, what if we offer you more money? Would you then narrow the exclusion? That never happened. Sure, sure. One thing confuses me about your argument. You say there are claims, and you give three or four examples, that would not be excluded by this agreement, hence it's not illusory. What's unclear to me is your position is on this. Imagine a complaint was served on UBS, a two-count complaint. Count one of the complaint alleges precisely one of those types of claims that you say is not excluded by this clause. Count two then alleges one that is smacked within the clause. It's a repeat of the SEC one, for example. So we have a two-count complaint as one count that should be uncovered, one count that should be excluded. One count, two. What's your position on that complaint? Would you have a duty to defend that complaint and provide coverage for count one? Yes, Your Honor. We would submit that the existence of a count that falls within the ambit of the exclusion is sufficient to exclude the entire complaint coverage. You would have to cover another count. Correct, Your Honor. What if within a count there is, it alleges that there are two different acts which gave rise to that breach. One of them covered, the other uncovered. What do we do there? Your Honor, we again would submit that the exclusion would apply. The focus of the exclusion... Even if each of them were sufficient in and of themselves to constitute a claim under that otherwise covered count? Correct. The focus of the exclusion is on what's in common between the prior and disputed matters, not what's different. With respect to your question about how do we define the term capital C claim, and UBS's counsel referenced Judge Howard's dissent in Raytheon, we would point out some key differences between those cases. So first of all, Raytheon was a motion for judgment on the pleadings. This case went all the way through summary judgment. UBS's argument in the briefs that you should look to the written notice prong of the claim definition is an entirely new argument that they're raising on appeal, and we would submit that that is not without prejudice to the insurers, having gone all the way through discovery. In the district court proceedings, everyone agreed that a capital C claim is a proceeding. So each of the disputed matters was a claim, and then the only question is how you aggregate them. The reason why this is not without prejudice is because the policy operates on a claim by claim basis. Whether a capital C claim is made in the policy period obviously depends on how you define a claim. There's a per claim retention of half a million dollars, so how many claims there are is obviously a big issue. UBS went through the entire discovery without saying, you know what, we think that a capital C claim is actually many small pieces of a complaint, and of these 1,500 disputed matters, here's how many capital C claims we think there are, here's how many retentions we think there are, here's how we're assigning defense costs for a particular lawsuit to those different capital C claims. None of that happened, which is why we think, again, that the fact that they're raising this for the first time on appeal, again, is not without prejudice to the insurers. If I understand your answer to the prior question I asked, you would agree with them in part that if a single proceeding, i.e., one complaint commencing a single proceeding, had two counts and the first count was an example of one you give at the end of your brief that is not excluded by the policy, there would be coverage for that even if it was joined with count two, which was excluded. No, Your Honor. We would submit that if you look at a lawsuit and there is some, again, looking to the language of the exclusion, again, any fact in the lawsuit that's related to the prior matters, the entire lawsuit would be barred by the exclusion. I think you've changed your answer to my first question. I may have misspoke then. Yeah, I think you did. So this strikes me as rather odd, though. So if I get a complaint from a plaintiff that alleges one of the counts that is at the end of your brief as an example of a non-excluded count, coverage for that? No, Your Honor. Not if it's part of a lawsuit that's otherwise not covered. It's got one count. Correct. It's an example. Correct. Under the rules of joiner, plaintiff decides I'm going to tack on another count, separate count, and tax on one that parrots part of the SEC-1 investigation. You're saying that all of a sudden the count one, which by itself would have been covered, is now not covered? Yes, Your Honor. Our view is that a claim is a lawsuit. That's what UBS bargained for. There's obviously efficiencies to having a clear definition of a lawsuit as a claim. Again, the issue of retentions, when it's first made, et cetera. And we would submit that the lawsuits, excuse me, that the exclusion speaks in terms of capital C claims. And if any portion of that lawsuit is within the ambit of the exclusion, the lawsuit is not covered. That seems rather unusual because given the rules of joiner that claim is defined. And again, I would refer back to the fact that this new issue of how capital C claims should be interpreted is a new issue that UBS is raising on appeal. This fortuity or lack of fortuity that Judge Keada is addressing with you     It's not a new issue that UBS is raising on appeal. I don't understand how underwriting takes place with those kinds of unknowns that are completely in the hands of some unknown plaintiff. But you're telling me that's how it should work. Your Honor, the insurance coverage is always at the mercy of the plaintiffs for the good or for the bad. A duty to defend can be triggered expressly because a plaintiff is pleading into coverage or not pleading into coverage. The one thing I would point out about this exclusion specifically, and I think this addresses Judge Keada's concern. I know you won't forget your point, but I'll forget mine. So that huge unknown, or at least appears to me to be a huge unknown, is or is not part of negotiations. I've never seen it addressed in underwriting. So I'm assuming it's not part of negotiations.  Your Honor, I would address that by saying that the claim, the capital C claim definition in this policy was heavily negotiated. There's 26 endorsements. Four of them deal with the definition of claim. Again, UBS was represented by sophisticated players. If it wanted to negotiate that into the policy, it could have. And again, the point that I was about to make is that what I think may address Judge Keada's concerns is that for every other exclusion in this policy, there is a built-in allocation. So the policy form in the exclusion sections bars coverage for loss in connection with any claim. During the policy underwriting, UBS negotiated to change that preamble to loss in connection with that portion of any claim. So that's endorsement states to the policy. So that built-in allocation applies to every other exclusion in the policy, but not to the specific litigation exclusion. So again, these are two sophisticated parties. UBS was represented by sophisticated players, and it could have asked for that same allocation to be built into the specific litigation exclusion. Yes, Your Honor. Yes, Your Honor. You mentioned duty to defense. Yes. And UBS claims that they are entitled to defense-related expenses. If there was, quote, a remote possibility of coverage, end quote. When does that duty arise? Your Honor, these are not duty to defend policies. At most, the policies in the allocation provision say that if there's a dispute about what's covered and what's not covered, the insurers will advance what they think is not in dispute until there's essentially a judicial determination. So we would submit that there's not a duty to defend. As the court below said, the remote possibility of coverage standard really is not applicable here for that reason. Let me change the question. When does the remote possibility arise? Well, Your Honor, I think in this case, the summary judgment was determined based on the pleadings, basically comparing the pleadings of the prior matters and the disputed matters. We would submit they're either covered or not covered. They're either within the exclusion or they're not within the exclusion. We would submit that even if the remote possibility of coverage standard applies, it doesn't apply here. We think that looking at W. Holding, really the remote possibility of coverage was a standard that applied at a preliminary injunction stage. UBS never moved for a preliminary injunction here. Why wouldn't it arise at the time of the final complaint? Your Honor, there was no duty to defend. Correct. UBS never moved for a preliminary injunction for advancement of defense expenses, which is when I believe that that remote possibility standard comes into play under W. Holding. Two quick additional points I'd like to raise with respect to the similarities and differences between the prior and disputed matters. I think it's important to note that UBS itself affirmatively argued that the prior and disputed matters were not covered. So, the prior and disputed matters are substantially similar. It moved to dismiss the Fernandez case on that basis. The Fernandez court agreed that the prior matters put the Fernandez plaintiffs, quote, unquote, on exact notice of their exact allegations. So, we would submit that UBS is judicially estopped to deny the similarities between the prior and disputed matters. The next point that I would just reiterate is that UBS's arguments here are pretty untenable. In the normal related claim case, usually an insured, a policyholder saying, well, you can't relate the disputed matters to the prior matters because there's so many individual differences amongst the prior matters. Here, most of the prior matters were filed after the policy expired. So, UBS basically has to say, well, all of the disputed matters are really very similar. And even though they say you need to make an act by act comparison, in the end, they say the disputed matters really have three things in common. All 1,500 have three things in common. And those three things are the bond market crash, the lines of credit, and questions about suitability. Well, if all of those 1,500 matters have those same things in common, we think it's pretty easy to then relate those three key aspects to the prior matters. As Judge Kayada pointed out, both the prior and disputed matters concern certain fundamental characteristics of the bonds and the funds. With respect to UBS standing on all sides of these transactions and having conflicts of interest. With respect to UBS being able to manipulate the market to mask the true demand for the bonds and the funds. With respect to aggressively marketing these funds to customers, despite their risk tolerance, and despite knowing that the funds had serious risks concerning liquidity leverage. In the end, your honors, we would submit that those inconsistencies in UBS's arguments, in addition to the contrary position they've already taken in Fernandez and prevails on, mean that the district court judgment should be affirmed. Thank you, your honors. A few brief points. On the proceeding by proceeding point, there's no support for the insurer's interpretation, taking a proceeding by proceeding approach. Look at the definition of claim. Claim includes proceedings, of course, but it also includes any written notice of a wrongful act. And that policy definition was clearly written in broad terms. Use disjunctive or to cover all possibilities. This is if the policy reads. What's your response to the point that there is general language to the other exclusions that does call for something closer to an act by act comparison, but this exclusion doesn't have that. What do you mean by this exclusion? You're talking about the specific litigation exclusion? The specific litigation exclusion, the act to act comparison is defined by first, the definition of claim, which is an issue. I would agree, your honor, but I don't think that that's dispositive of the issues. That's right. And that insertion simply further removing doubt doesn't speak to the distinction between for any claim and in connection with any claim that's within the exclusion that we're relying upon. Beyond that, you have the claim definition, which includes any written notice of a wrongful act, and they have no explanation for that language and its coverage. Beyond all that, we argued repeatedly below for an act to act comparison. As quoted at page 10 and 11 of our reply brief, examples of us insisting upon an act to act comparison. This has not come as a surprise to them. The fact that we may have further refined our arguments in light of the district court's analysis is expressly permitted under the rules in the appellate procedure for the same reason that I don't retender my summary judgment brief to you all. I submit a new brief on appeal after the district court has issued its ruling. There are examples, every one of their examples of non-illusory coverage is barred under their definition of in any way involving any claim. So at the end of the day, they never marry up the two, and that should be troubling to this court. They are offering a limitless interpretation, not offering this court a counter construction to cabin that in and giving examples that don't meet the logic of what they're arguing for. And finally, with respect to remote possibility, Your Honor, the policies disclaim a duty to defend, but they define defense expenses to include losses. And in Liberty Mutual, a case that they don't respond to, the Eighth Circuit held that when you define losses to include defense expenses, there's an obligation to essentially reimburse for those losses if there's arguably or potentially a basis for coverage. When is that decided? When do you reach the conclusion that there is a remote possibility? Sure, you can reach it at any stage. At any stage doesn't answer my question really. Sure, it's after they are incurred. So the logic behind that rule is I'm faced with a claim. I have to spend money to defend against it. There just needs to be an arguably or potentially a remote possibility of coverage for the insurer to reimburse me. We're not trying to figure out what the facts actually were. We're looking at the allegations in the complaint. And if they're arguably within coverage, they have to reimburse me for those expenses. So it's at the time you file the complaint? It's at the time that the plaintiff files the complaint against us. That's correct. If there are no further questions, we ask that you reverse the judgment. Or at a minimum, you could vacate and remand for a determination up to the policy limits. All right, thank you both. Thank you, Your Honor. Thank you.